WILLIAM P. RADLEY AND THOMAS J. RADLEY, INFANTS, BY WILLIAM J. KANE, THEIR SPECIAL GUARDIAN, APPEL-LANTS, v. PETER KUHN AND OTHERS, EXECUTORS, ETC., OF MICHAEL KUHN, DECEASED, AND OTHERS, RESPONDENTS.

*Trusts — suspension of the power of alienation — a valid trust sustained, although another trust in the same will is not.*

A testator devised certain real property to his executors upon the following trust, to take charge of the said real estate, and out ŏf the income thereof "to pay each of my grandchildren, William and Thomas Radley, the sum of seven hundred dollars, the said sum to be paid to each of them without interest at their respective arrivals at the age of twenty-one years, and in case either shall die before such age the survivor to have the whole sum of fourteen hundred dollars. * * * The trust hereby created is to continue until my son Charles Henry arrives at the age of twenty-five years, unless the said Charles Henry sooner dies. If he lives to be of such age he is to have the rents and income and benefit of said real estate * * * (after the aforesaid payments there-from are made) during his lifetime, and if he should die leaving any lawful children, the said real estate on Eighth avenue is to become theirs in fee when they arrive at the age of twenty-one years."

*Held,* that as in case one of the Radley children and Charles Henry the son should both die before the fourteen hundred could be raised, the trust must still, by

the terms of the will, continue for the benefit of the other Radley child; and as also in the event that both the Radley boys should die before the trust in their favor was executed, and Charles Henry should survive them, the estate would be inalienable during Charles Henry's life if the trust continued for that period, or if the trust ended when the Radley boys were paid off, no estate could vest as Charles Henry might die without ever having any lawful children, therefore there was a possibility that the power of alienation might be suspended beyond two lives in being at the death of the testator, and that the trust was consequently void.

By the same will certain other property was left in trust for the benefit of two daughters for life, and at their death it was given to their children.

*Held*, that this being a valid trust should, under the circumstances of this case, which neither disclosed the value of the respective pieces of property or the general intention of the testator as regards the division of his property, be sustained notwithstanding the invalidity of the other trust.

APPEAL from a decree of the surrogate of the county of New York admitting to probate the last will and testament of Michael Kuhn.

The testator died at the city of New York, on the 5th of November, 1878, leaving a last will and testament, bearing date the 22d day of August, 1877, of which the following is a copy, excepting the formal paragraphs.

"*First.* I give and bequeath all my household furniture to my daughter Matilda.

"*Second.* I give, devise and bequeath unto my executors, hereinafter named, the houses and premises known as numbers 472 Eighth avenue and 496 Ninth avenue, in said city, together with all other property, real and personal not hereinbefore devised, in trust however, to and for the following purposes, to wit: to take charge of the said real estate, and to collect and receive all income therefrom, and to pay all taxes, assessments, and interest moneys thereon, and out of said income from the house number 472 Eighth avenue, to pay each of my grandchildren, William and Thomas Radley, the sum of seven hundred dollars, the said sum to be paid to each of them without interest at their respective arrivals at the age of twenty-one years, and in case either shall die before such age, the survivor to have the whole sum of fourteen hundred dollars, and in case they both should die before that age, my executor has no part of the said sum to pay to any one whomsoever, and said payments

so to be made, are to be made, are to be free of their parents control; the trust hereby created is to continue until my son Charles Henry arrives at the age of twenty-five years, unless the said Charles Henry sooner dies. If he lives to be of such age, he is to have the rents and income and benefit of said real estate, number 472 Eighth avenue only (after the aforesaid payments therefrom are made), during his lifetime, and if he should die leaving any lawful children, the said real estate on Eighth avenue is to become theirs in fee, when they arrive at the age of twenty-one years, and the same is devised accordingly. And my two daughters, Matilda Kuhn and Margaret Schoenberger, are to have all the income and benefit of my real estate number 496 Ninth avenue, each to share and share alike (after all interest moneys, taxes and assessments thereon are paid when due) during their lifetime; and at their death, if they leave any lawful children, the said real estate on Ninth avenue only is to become theirs in fee, and the same is devised accordingly.

"No son-in-law of mine is to have any control or benefit of my property.

"*Lastly.* I hereby nominate, constitute and appoint my brother Peter Kuhn, my son-in-law J. C. Schoenberger, and my friends Charles Sier and Louis Sier and Jacob Michael, executors of this my last will and testament, giving them full power (while performing the aforesaid trust) to execute all mortgages on my property necessary to renew the mortgages now on or to raise money to pay them off. The new mortgages hereby authorized are not to exceed the amount of the mortgages to be renewed or paid off; and I hereby revoke all other former wills made by me."

The testator left him surviving his son Charles Henry, who was then eighteen years of age, two daughters, Matilda Kuhn and Margaret Schoenberger, both of whom were of full age, William Radley and Thomas Radley, grandchildren, who were then under fourteen years of age, but their exact ages are not disclosed. It does not appear from the evidence taken before the surrogate that there was any incumbrance by way of mortgage upon either house and lot mentioned in and devised by the will, nor does it appear that the testator left any personal property except that which was devised under the first clause of the will. Nor was it disclosed what was the rental value of the premises No. 472 Eighth avenue, or the

amount of taxes annually assessed upon the same. The Radley children appeared before the surrogate by their special guardian and contested the probate of the will upon the grounds, among others, that the testator did not in due form of law acknowledge, publish and declare the same to be his last will and testament; and that the trusts set up in the will and sought to be established by the testator are illegal and void.

They also, in case the said will should be admitted to probate, prayed the surrogate to pass upon and determine the true construction, validity and legal effect of the several provisions contained in the will, in pursuance of the power and authority conferred upon the surrogate by chapter 359 of the Laws of 1870. The surrogate overruled the objections made to the probate of the will upon the ground that the same was not published and declared by the testator to be his last will and testament. He also upheld and sustained all directions, trusts and provisions as being valid and not contrary to the provisions of the statute, limiting the power of alienation.

From the decree the Radley children appeal. The children of the testator seek to uphold the will and to sustain all its provisions.

*Nelson J. Waterbury*, for the appellants.

*George S. Hamlin*, for Charles Kuhn and others, respondents.

*Edward C. James*, for the executors, respondents.

BARKER, J.:

The evidence is abundant and satisfactory to establish the due execution and publication of the will as required by the statute. Each of the subscribing witnesses testify distinctly and positively that the testator declared the instrument to be his last will and testament, and that he requested them to become subscribing witnesses thereto, and that he in the presence of each acknowledged it to be his last will and testament.

Mr. Peck, one of the subscribing witnesses who copied the will from a draft presented to him by the testator, states that he saw the testator sign the will at the time he declared the same to be his last will and testament, and that the same was done in the presence of

himself and Mr. Michael, the other subscribing witness. He further states that at the time the will was subscribed by the testator in the presence of himself and the other witness he read to him the attestation clause, which is in the following words:

"Subscribed by Michael Kuhn, the testator named in the foregoing will, in the presence of each of us; and at the time of making such subscription the said instrument was declared by the said testator to be his last will and testament, and each of us, at the request of the said testator, and in his presence and in the presence of each other, sign our names as witnesses thereto at the end of the will."

This being read to the testator at the time of the execution of the will, and in the presence of the subscribing witnesses, and the testator assenting to the statements contained in the attestation clause, is evidence of itself of due publication of the will.

The real and important question presented by this appeal is whether the trust intended to be created by the testator is valid.

It is claimed by the Radley children that the testator sought to create a trust in all his real estate, and if the same is upheld and carried out according to his directions the power of alienation is necessarily suspended beyond the period of two lives in being at the time of the creation of the trust estate, and is therefore contrary to the provisions of the statute against creating perpetuities and is void. It therefore becomes necessary to examine the statute upon the subject. "The absolute power of alienation shall not be suspended by any limitation or condition whatever for a longer period than during the continuance of not more than two lives in being at the creation of the estate." (1 R. S., 723, § 15.) "Every future estate shall be void in its creation, which shall suspend the power of alienation for a longer period than is prescribed in this article. Such power of alienation is suspended when there are no persons in being by whom an absolute fee can be conveyed." (Sec. 14.)

By the terms of the will an estate was given to the trustees, which vested in them the title with the power to collect and receive all the income therefrom, to pay the taxes assessed and interest money thereon, and to pay out the net income as in the will directed.

So long as it is necessary for the trustees to have and hold this property for these purposes, no estate can vest in any other person. As the trustees were given full and complete power and control

over the real estate, to enter into the possession of the same and to collect and receive all income, and to pay out a portion of the net avails to beneficiaries who took no interest or estate in the land, it was essential to carry out the aims and purposes of the testator, to give the trustees the title to the property during the continuance of the trust intended to be created.

Upon this question there can be no doubt. A trust is always constituted through the medium of a legal estate and a trustee. Such legal estate is a present estate, and by the settled principles of law is equal in quantity and duration to the legal purposes of the trust.

It is equally plain, and needs no argument to prove, that during the period which it was intended by the testator that the trustees should have and hold the title to the lands they possess no power or authority to sell and alienate the same or any parcel thereof. They are destitute of authority to convey the fee. At no time, nor in any event, were they empowered to make a sale and conveyance by virtue of any of the provisions in the will. When the trusts mentioned were fully executed, then by the operation of law, without a conveyance from the trustees, the title would vest in those who are to take the ultimate estate. The statute is conclusive upon the subject, for it is provided : " Every express trust, valid as such in its creation, except as herein otherwise provided, shall vest the whole estate in the trustees in law and in equity, subject only to the execution of the trust. The persons for whose benefit the trust is created shall take no estate or interest in the lands, but may enforce the performance of the trust in equity." (Sec. 60, p. 729.) And by the sixty-fifth section (page 730) it is further provided : " Where the trust shall be expressed in the instrument creating the estate every sale, conveyance or other act of the trustees in contravention of the trust shall be absolutely void."

These provisions of the statute add nothing to the common-law rule concerning the character of the estate taken by the trustees, or as to the power of the trustees to alienate property held in trust, but were introduced in the statute relative to trust estates as plain and concise declarations of the law on the subject.

It being clear and certain that the trustees have an estate in the lands, and that they have no power to alienate the same during

the continuance of the trust, the next inquiry is, has the power of alienation been suspended by the terms of the will beyond two lives in being at the death of the testator, at which time the trust estate was created.

If by any possibility the title can be held in the trustees beyond two lives in being, at the time of the creation of the estate, then a perpetuity is created which is unauthorized by the statute.

In *Hawley* v. *James* (16 Wend., 120), Justice Bronson says: " If the estate is so limited that by any possibility the power of alienation may be suspended beyond the statute rule the limitation is void." Chief Justice Nelson, in the same case, remarks : " If, in either aspect, the limitation of the estate might suspend the power of alienation beyond the time allowed by law it will be impossible to sustain it, because the rule is well established that a limitation which by possibility may create such a suspension is void." A like opinion is expressed by Chancellor Kent in his Commentaries (vol. 4 p. 282; 4 Cruise, 449).

The possibility that the estate in the trustees may continue beyond two lives in being exists in this case. The trust for the benefit of the Radley children must continue, by the provisions of the will, until the sum of $1,400 is realized out of the net proceeds of the house No. 472 Eighth avenue, unless they both sooner die.

Suppose Charles Henry, the son, had died immediately after the death of his father, and before the $1,400 to be raised for the benefit of William and Thomas Radley had been accumulated, that would be one life terminated which was in existence at the time of the creation of the estate ; and then one of the Radley children should die, the sum of $1,400 not yet being realized, the trust must still be continued, although two lives in being and interested in the property as beneficiaries are dead, and the trust must still continue to carry out the purposes of the will, because the survivor of the Radley children is entitled to have the trust estate continued.

It was also provided that Charles Henry should enjoy the rents, income and profits of the real estate during his lifetime, if he should survive the Radley boys, or the period when the $1,400 should have been accumulated for their benefit. Now, if it should occur that both of the Radley boys should die before the trust in their favor was executed, then two lives have expired since the creation of the

trust estate, and no person is in existence in whom the estate vests in fee 'and who can convey the property. This would be so whether it be held that it was the intention of the testator to continue the title in the trustees after the Radley boys arrived at full age, if they should reach that period, and they, as trustees, pay over the rents and profits to Charles Henry during his life, or whether the trust terminated on its being executed, so far as the Radley boys were concerned, and Charles Henry went into possession of the property as a person having the life estate; for if it be held that the trust continued then the estate was unalienable during his life. If it be held, as has been argued, that the trust ended when the Radley boys were paid off, then no estate could vest because Charles Henry might die without ever having any lawful children.

In the will there is this provision following the direction to pay over $1,400 to the Radley boys: "The trust hereby created is to continue until my son Charles Henry arrives at the age of twenty-five years, unless the said Charles Henry sooner dies."

It is not quite clear to my mind just what was intended by the testator in the use of this phrase. He does not in terms declare that if Charles Henry dies before he arrives at the age of twenty-five years that the trust in favor of the Radley children should terminate. It is manifest that he did not intend that the trust should cease at all events upon the death of Charles Henry, without regard to the condition of the trust estate, when that event should happen, because if Charles Henry had died immediately upon the creation of the trust estate it is clear that the testator intended that the trustees should, nevertheless, execute the trust, so far as his grandchildren were concerned, and accumulate the sum intended for their benefit.

It was probably in the mind of the testator, and he so supposed, that at the time Charles Henry arrived at the age of twenty-five years, if he should live so long, the Radley boys would then be of full age, and the sum given to them realized and paid over at that time.

It would seem also to have been in the mind of the testator that if Charles Henry should live to arrive at the age of twenty-five years, and the Radley children, or either of them, were still alive, and the sum of $1,400 intended for them, not yet accumulated, that

Charles Henry should take his interest, subject to creating and paying over the amount intended for the grandchildren, for it is provided if Charles Henry lives to be of the age of twenty-five years he is to have the rents, income and benefit of the said real estate No. 472 Eighth avenue, only after the aforesaid payments therefrom are made during his lifetime.

But it does not seem to be necessary to consider and interpret all of the possible views which may be taken of this inartificial instrument, and seek to ascertain the meaning intended to be expressed in some of the phrases and sentences contained in the will, for the trust intended to be created by the testator is invalid and must fail for the reasons which we have already stated.

The trust which we have been thus far considering relates wholly to the house No. 472 Eighth avenue, and as the same is void it remains to be determined what effect it has upon the other trust created by the will concerning house No. 496 Ninth avenue.

The title to this property was vested in the trustees the same as in the other property, with a like power of taking possession, to collect and receive the income, to pay taxes and assessments, and the net income is to be paid over to his daughters Matilda Kuhn and Margaret Schoenberger during their natural lives, and at their death the same is to vest in fee in their children.

This is in every respect a valid trust and may be enforced without violating the provisions of the statute. It relates to a separate and distinct piece of property. The beneficiaries named are other persons than those provided for in the other trust, and it may be treated as separate and distinct and upheld as valid.

It has been argued by the counsel for the grandchildren that to declare the first trust void and this valid would break up and interfere with the scheme of the testator, and that all of the trusts should be declared void and the court decree that as to the testator's real estate he died intestate.

If we regard the will as creating a single trust for two purposes, one lawful and the other unlawful, the trust is good for the lawful purpose, although void for the unlawful one.

The principle is now well settled that the courts lean in favor of the preservation of all such valid parts of a will as can be separated

from those that are invalid, without defeating the general intent of the testator.

If both trusts are declared invalid, and it be held that the testator died intestate as to all his real estate, then the effect is to distribute the same equally among all his children, the grandchildren taking the portion which would have descended to their mother if living.

We are unable to determine that it was the intention of the testator to give his property in equal proportions to his children by the terms of his will.

The value of these separate properties is not disclosed. It would be a mere conjecture and assumption to act upon the idea that these separate pieces of real estate are of equal value. If the trust had been carried out as to all the property it may be that the gift to the grandchildren of a gross sum is greater in value than the life estate or lands given to his own children. It cannot be determined from the case before us how near equality the testator sought to secure in the beneficial interests which he gave his children and grandchildren.

By holding that the first trust is void and the second valid it is manifest that the daughters secure a greater interest in their father's estate than he intended by the provisions of the will, for they together will take one-half of the house No. 472 Eighth avenue in fee. But we are without information how much their estate is increased by the results which we have reached.

At the time of the making of the will the property embraced within the first trust appears to have been incumbered by mortgages, but the amount is nowhere disclosed.

The testator in creating the second trust made a lawful and valid disposition of a portion of his property, and under the circumstances of this case we are constrained to uphold the trust and not to interfere with his directions, for that would be to make a will for him. (*Harrison* v. *Harrison*, 36 N. Y., 547, and the cases there cited.)

The intent of the testator having thus failed, so much of his estate as was the subject of the void trust goes to his heirs-at-law.

If any accumulations of the rents and profits are now in the hands of the trustees arising from lot No. 472 Eighth avenue, they must take the same direction.

The decree of the surrogate should be modified accordingly, and

the costs of all the parties to this appeal be paid out of the funds in the hands of the receiver or the trustees.

BRADY, P. J., and DANIELS, J., concurred.

Decree modified as directed in opinion.